Case No. 255464, Nationwide Mutual Insurance Company, et al. v. Homestead Farm and Lawn LLC, et al. Oral argument not to exceed 15 minutes per side. Mr. Galwan, you may proceed for the appellants. Good morning, your honors. John Galwan of Bassberry and Sims. I represent the two appellants, Homestead Farm and Lawn and Parks Brothers General Partnership that I'll refer to for simplicity's sake collectively as Homestead. The context of this case I think is critical, your honors. Homestead paid nationwide over $300,000 in premiums largely to ensure equipment that it rented out to others. The essence of the equipment rental business is that other people possess the equipment, not the owner. Now there are multiple policies that are part of the record here, the mutual policy, the farmland policy, the agribusiness and the renewal of that. But fortunately all the language is the same. And so I want to hone in on just a couple of critical points in my limited time for oral argument here. The importance here is Homestead purchased additional coverage for fraudulent acts. And Applied Machinery and Garth McGillaghy who owned it defrauded Homestead on rental equipment up to $3 million in loss of property. And Applied Machinery and Homestead had done business since 2017 and it was not until 2023 when rental payments stopped coming in and Homestead first discovered this fraud. It was buying Italian manufactured Merlot units through Applied Machinery and leasing them back. While Homestead, the record shows, had legal title, had bills of sale for all of the equipment and thus legal ownership, the units remained in either Applied Machinery's possession over in South Carolina at its place of business or when Applied Machinery re-rented those pieces of equipment to its customers wherever those customers resided. So when it filed its claims, the two critical parts, while there were four primary reasons in the denial letter, on this appeal there are sort of two parts that need to be focused in on. One is that Nationwide denied the claims because it said that Homestead did not have, quote, possession under the false pretenses coverage, that additional coverage that had been purchased. And secondly, the additional coverage sort of provided this exclusion to the exclusions of 2E and 2U and it referred to equipment that, quote, is held for sale. And so those were two reasons for denial that the district court agreed with. And interpreting the policy ruled in favor of Nationwide for summary judgment. After the denial, even though Homestead had not complained or written any letters or hired counsel, Nationwide took the step of suing its insured, which brings us to where we are today. On the actual possession element, your honors, the equipment dealer's coverage endorsement, that extra coverage that was purchased, is pretty clear what the context is in which we have to view the definition of possession. And I'm not going to quote too much language, but there are a couple of parts that I need to focus in on. And one is in the equipment dealer's endorsement, it says, we will pay for direct physical loss or damage that results from any of the following. And there are two of the subparts that apply here. One, someone causing you to voluntarily park with any covered property by trick, device, fraudulent scheme, or false pretense at the time of sale, demonstration, rental, or lease. And then three, conversion of covered property that you rent or lease to others. And then you get to subpart B, which is where this issue comes up of how do we define possession, because it says we will not make payment for loss or damage under 1 and 3 above unless you were in possession. Now, the critical thing here is Nationwide did not define possession in the policy. There's no definition. It wrote the policy. The insurer can put anything in the policy, and the insurer is not in a position to negotiate that. And, of course, it chose not to define possession. It didn't define it as actual. It didn't define it as physical. So I understand that this case largely turns on whether, or from your position, whether possession means actual physical possession or constructive possession. But what do you, and you wanted to mean constructive possession, but what do you mean by constructive possession? Do you just mean legal title? Yeah, it's lawful. I would call it lawful possession. But if you just have legal title to something, that doesn't necessarily mean that you have even constructive possession. So if I've rented my house, if I own it in fee simple and I rent my house to somebody else, I don't have the lawful right to possess the house if they have a lease that is unexpired, right? So I guess I'm wondering what you mean by constructive possession. Is it just legal title? And that doesn't seem to comport with my understanding of constructive possession. Well, so in Tennessee, like many things, as Judge Gilman might recognize, sometimes there's not a lot of Tennessee case law directly on point. I've done a few Tennessee diversity cases, I understand. But what does Tennessee law tell us about that? Tennessee law informs that when you're looking for the definition of an undefined term, that we can look at dictionary definitions. And so Tennessee cases that we've cited in our briefing specifically sort of bless the definitions of Black's Law Dictionary. And in those dictionary definitions, it talks about, number one, dominion and control. And so how can we have dominion or control? I mean, you're buying coverage to cover equipment that the renter has in its possession. The farmer takes the tractor away from you and drives it in his field, right? Or whatever the piece of equipment is. And in this case, I think the important fact is that my client was wiring millions of dollars to applied machinery so that this equipment would ship across the Atlantic Ocean and come to it. And my client meticulously made sure that they had a bill of sale, they had legal title to every bit of that property. Now, the summary judgment record shows that some of it did come through into its possession and then to them. But as this relationship went on from December of 2017 through 23, when the fraud was discovered, the business had grown and oftentimes the equipment would go directly to the renter's possession, right? But if they had the legal title, Your Honor, obviously, you know, if there was a dispute about who had dominion or control over this property, my client should win. But the Black's Law Dictionary itself, as part of its definition, says legal ownership. No, it doesn't. It talks about control. And the problem, even the language you quote from the policy makes it sound like possession and legal ownership are not synonymous because it says, you know, that you will not be, we will not make payment for loss or damage. It talks about unless you were in possession and had legal title of, legal ownership of the covered property. So apparently the concept of possession is different from legal ownership, even if it's constructive possession. Well, I'm quoting from Black's Law Dictionary where it defines possession. And the words that are included in that definition, Your Honor, say something that a person owns or controls. And so I do think ownership. It says control or dominion over property without actual possession. It doesn't say, oh, but if you have legal ownership, then you've got dominion and control. That isn't what Black's Dictionary says. Well, I think it says that it's something that a person owns or controls. It doesn't say owns or controls. It says control or has dominion over. So your best definition is Black's. We can all look at Black's and maybe various, we should look at the version that was in place at the time the contract was written. But you don't have any other legal authorities. There's nothing from Tennessee that would tell us constructive possession means legal title. Well, what I don't have are Tennessee cases that say here's an insurance policy, here's the word possession in an insurance policy, and here's what it means, and it means constructive possession. I have to go a little bit further. So, for example, like the Tennessee Supreme Court in the 2007 decision of State v. Edmondson clearly states, now this is interpreting language in a statute, but it's still interpreting the word possession. And it notes that possession on its face could mean both actual possession and constructive possession. And there are other cases like the Mobile Home City v. Dependable Insurance, which is a Tennessee Court of Appeals opinion we cite in the briefs, includes actual and constructive possession. You have legal title to a vehicle, and someone else rents that vehicle from you and is driving it and putting the gasoline or charging it, whatever, keeping it in a garage and driving it every day to and from work, but you have legal title to that. And the person who drives it every day to and from work crashes into somebody absolutely negligently and does them in. Do you have possession of that car such that you are liable for that? Well, that hypothetical reminds me of a case that you were on the panel for, which is State Farm v. Dago from 2015, in which there was a house sitter who was at a house and the people were gone and they were feeding the dogs. And the person actually had actual possession of the automobile because he took it to go pick up his intoxicated friend who couldn't drive, and he fell asleep and veers across and ends up killing some people and seriously injuring the plaintiff. And so there's an instance, Your Honor, where the person, there's no dispute, the person had actual possession of the automobile, but it depends on what the policy language is. In that policy it said that it required lawful possession. And so when the person had sent a text message saying, may I use the truck, and they went, ha-ha, no, he obviously under those facts didn't have lawful possession. But that's a great example of where someone can have actual possession of a vehicle but not have what is required to have possession for purposes of the policy. But here you concede you don't have actual physical possession, never did. You want to say you have constructive possession, but your case rests on constructive possession means legal title. It doesn't mean something like, well, I don't own it, but I have the ability to use it. So your case rests on the proposition that constructive possession is the same thing as legal title. Is that right? And you get that, your best support for that is Black's Law Dictionary. Well, Your Honor, I think from a factual standpoint, we have ample case law that says you can interpret a contract or a contract that happens to be an insurance policy to have an illusory result. Well, that, I guess, is the other question. You didn't bring that claim. You didn't say, like, I bought illusory insurance. Well, I think that if you don't accept that my client had at least constructive possession of this equipment due to the fact that it purchased it, it held bills of sale for the property, some went directly to the renter from the manufacturer, some did not, that what have you bought coverage for? Why is this policy not illusory? Good question. I'm going to ask your opposing counsel that. Okay. I mean, it just, and the same thing for held for sale. We buy this extra coverage because the policy itself doesn't have coverage for rental equipment. He goes and spends $306,000 to cover this because he needs coverage for equipment that he's not going to have, that the renter is going to have. And so how does he get that coverage? Well, if you interpret the held for sale to not pertain to the immediate antecedent in the paragraph, then again, once again, it's illusory. It's an illusory contract because what have you purchased? You're trying to buy false pretenses coverage. You're trying to buy leased or rented equipment coverage. And you pay hundreds of thousands of dollars for it, and your insurance company sues you and denies coverage. I mean, to me, I think if you look at it, you have to define these things in the context of the policy. And the context of the policy here, Your Honor, is they purchase coverage for rental equipment. And I just don't know how the business of renting equipment, whether it's a telehandler or a tractor, you know, cannot be anything but illusory if you follow the court's decision and you follow Nationwide's argument. You know, I do see that. Thank you very much. And I reserve four minutes for rebuttal. You have your full rebuttal.  What about Mr. Gellin's argument that Nationwide provided totally illusory coverage here? Yes, Your Honor. My name is Brandon Reedy, by the way. I represent the appellees collectively referred to as Nationwide. As far as the argument that there's illusory coverage, I think kind of giving some context of how this policy flows makes a little more sense jumping into that issue.  Needing all the help we can get. Certainly. So starting out with the property coverage form lays out different types of covered property, business personal property being one of those. And one of the subcategories is machinery or equipment. By itself does not cover equipment that's not in your possession or not within 100 feet of your premises. Then we add on the endorsement that we're talking about here, the equipment dealer's coverage endorsement. That essentially, one of the initial provisions, removes that limitation of the must be on your premises and must be within X number of feet of your premises by allowing there to be coverage for machinery and equipment, including equipment held for sale. And then it goes further to then add the leased or rented equipment coverage and then the false pretense coverage that we're here talking about today. As far as reasons why it's not illusory coverage, context again matters. The transactions we're talking about between Applied Machinery and Homestead essentially were done by telephone and wire. For the most part, Homestead didn't lay eyes on these things, never had possession of them. They were just wiring money to this individual for several years. Really, no questions asked as money was flowing in. And then here it is roughly seven years later and the individual no longer sends payment. They start actually digging into it, doing their due diligence on the transactions and realize that this gentleman is basically running a Ponzi scheme. The actual possession and legal ownership requirements and the false pretense coverage are significant because this isn't a dealership where I would go get a piece of equipment, rent it, and leave with it because at that moment the dealer has possession, presumably has legal title to that piece of equipment, which I am then renting from them. This is a situation where the dealership, if you were to pull up to Homestead and look for one of these pieces of equipment, it's not there. What difference does that make? So I go to them. I don't know what kind of equipment they sell, but I rent a combine and I use it in my field. So I went to a lot, like a giant combine lot, I don't know, and I rent the piece of equipment and I bring it to my farm and I farm my soybeans. And then I don't return it to them. So I'm the renter. Why does it make any difference that they ever had possession? Under your policy, you have to have possession and legal ownership of the covered property immediately prior to the loss. Well, on my theory, I rented the combine. I got it from the dealer. I rented it from them, and then I sold it to somebody else. I'm never going to return it to them. Are they covered? In that scenario, if they had possession and legal ownership. They had possession and legal ownership. When I went to their shop, their physical location, gave them money for a rental and took the combine from them. But then, you know, I farmed with it for six months, and then I committed the fraud. So they didn't have possession immediately prior to the loss. Six months intervened. I don't understand why there's any coverage for this rental equipment at all. So the provision you're referencing is D-1 about the legal ownership and possession. I do not think that would be an issue in the hypothetical that you raised because… I think it's B-1. We will not make payment for loss or damage under 1 or 3 unless you are in possession of and had legal ownership of the covered property immediately prior to the loss. Well, the loss is when the renter sells the equipment to somebody else, right, through fraud. They didn't have actual possession immediately prior to the loss. It's been six months since I drove it off their lot. I think what provides some context to that is the opening provision, the insuring provision of the false pretense coverage. And again, this is for a false pretense situation, not a conversion situation. But it says someone causing you to voluntarily part with covered property by trick, device, fraudulent scheme, or false pretense at the time of sale, demonstration, rental. So that's when the loss would occur, would be then, because you don't discover that it was a fraudulent scheme until you kind of look back in time and realize that at the time that you leased it, rented it, whatever it may be, a fraud was committed upon you, and then later it was discovered. So at the time the loss occurred would be when that fraudulent scheme took place. So the design to commit the fraud had to be in place at the time the rental agreement was executed? I'm not sure if the design had to be in place, I guess. Well, the trick, device, fraudulent scheme, or false pretense had to occur at the time of the rental agreement. Essentially what that is saying is that's what caused you to part with it, voluntarily part with your property. I see. And so essentially it would have to be in existence if that's what caused you to do the parting of the equipment itself. Okay. Because you couldn't have had the unauthorized sale but for the parting of the equipment at the time of the rental. Right. Had Nationwide ever thought of hiring somebody that really understood the English language to draw up some of these contracts? Well, I can say that at the bottom of each one of these forms you'll see this is a form policy document that's not unique to Nationwide. It is an ISO form. That doesn't excuse it. No, not at all, not at all. I've had occasion to wonder maybe I should just retire and draw up contracts for people like Nationwide because I actually could make them make sense. But tell me, I don't know if you've answered my question of why was this, when would this coverage have applied? Give me an example under this. If Homestead never had possession and it had to have possession and legal ownership of the covered property, when would there be any coverage under this Nationwide policy? I think a great example is one that actually was raised by Homestead at the summary judgment stage. It's one that I believe that they are presenting in a way of showing that somehow their claims now should be covered, but I believe it explains why there is and is not coverage in different scenarios. It's referred to in the briefs as the Kubota claim. Essentially, a gentleman comes to their dealership, rents a Kubota tractor. He actually paid the full rental amount up front, one single payment, leaves and never returns with the property. And so in that situation, Homestead had ownership, had legal title to that. The individual paid in full up front and then never brought the property back. And so we don't have the issue of immediately, I guess... So why isn't that a conversion claim? It is. So there's coverage under three, but no coverage under one is what you're saying. When would this, when would there be coverage under one? So under one... In the context of a rental. In the context of a rental. Essentially, similar scenario. Individual doesn't return with the property. You voluntarily parted with it. They're a lot one and the same, except one just doesn't involve fraud. So it would just be like a fraudulent-taking, fraudulent-type conversion of the property. The reason subsection three there is separate is just one that does not include this trick or device. It's a situation like the Kubota claim where the individual just took the property and didn't return. There was no fraud involved. He actually paid for the rental. He just didn't return the equipment. So you're saying that in the Kubota example, Homestead did have possession at the time that the equipment was rented and it had legal ownership, but then the guy who, the farmer who rented the Kubota tractor just never returned it. So they made a claim and you paid it. Right. So that's when coverage would apply. But I guess I was confused because in Homestead's brief, they say no, Kubota was just like here, where they would get you paid so that you didn't have to, they didn't have to have actual possession. So I think that's one thing that may be confused by the briefing by my opponent, is that the actual possession is immediately prior to the loss. And when that loss occurs is pivotal on the question. Why did the loss occur in the Kubota claim at the time of rental? It sounds to me like he paid for the whole rental period, and he was supposed to bring it back in a year or whatever the period is, and he didn't. So he converted the property, and I don't understand how they were in possession immediately prior to the loss. It's just like my combine example. They held on to the property for six months or whatever. So the Kubota claim was a conversion. In this false pretense section would be subsection 3 there, the conversion of the covered property. So it's not the at the time of the rental, that's the more fraudulent scheme situation. To ensure I'm addressing both questions kind of together, when would coverage be available? The reason coverage in the Kubota claim was available is, one, they had possession. They also had legal title. But not immediately prior to the loss. I think at least the way that it's being interpreted is that immediately prior to the loss was, we rent it to this individual because it's saying conversion of covered property that you rent or lease to others. So they rent or lease to this individual. They had immediate possession and legal ownership of that property at that time. Right, but the loss doesn't occur until he doesn't return the property at the end of the rental period. Right. What does immediately prior to the loss mean? Essentially that it hasn't passed hands, like essentially this situation that we're in now, it's unique that this situation kind of illustrates the point, but they rent this equipment. It's being imported by Applied Machinery. Applied Machinery takes possession of the equipment, immediately rents it to someone else. So there's like a two-step, and then it just keeps getting further and further down the line. And the reason it's significant here that there is actual possession and legal ownership is, otherwise the risk is infinite. And it certainly doesn't contemplate a situation where you never have possession of any of your equipment, and you just have coverage that could just be open-ended. Essentially it would be limitless. And there's no way to really quantify or even charge a premium for that type of risk of loss that you could never have any type of idea of what that would look like from an underwriting type perspective. So from Nationwide's viewpoint, Holmes, to have coverage, Holmes would have had to at some point acquired possession of this equipment. Physical possession. Physical possession before it rented it out. Right, actual possession of the equipment. Actual and physical are synonyms, I guess, in this context, right? Right. And you're saying in these stolen, in these equipment that came from Italy and all, they never got the physical possession. Right, they never took possession whatsoever. Do they have constructive possession, though, as your opposing counsel argues? I think it's vague, depending on which unit. I mean, this involved 28 different units. I think it really does go by specific ones. I know that at least 12 of them involved theft of what's referred to as theft of funds, and so they never actually even purchased a unit. They just wired money and it never came back with anything in return. And so some of the different portions of this claim do and do not involve actual purchase of the actual piece of equipment. As far as constructive possession, I do know that there were, which they've later learned, were not, what's the word to put on this, valid documentation provided to them by this individual, because we've actually, during the process of this litigation, learned that his business is in bankruptcy, and there's actually one of the serial numbers came up where one of these pieces of equipment was located, supposedly owned by another company, not Homestead, and was sold at auction. Okay, so if we thought that the contract term is ambiguous, what your opposing counsel wants us to say is Nationwide wrote the contract. Nationwide could have said this means actual or physical possession. It's ambiguous whether it means actual, physical, or constructive. Let's say we agreed with that. I know you will resist that, but let's say we thought it was ambiguous. Our next step would be to remand to the district court then, because there are factual questions piece by piece about what they constructively possessed. That would be your position. It would essentially have to be as to which one of the pieces of equipment they said they constructively possessed, because there wasn't documentation on all pieces of equipment. So I think having proof, and essentially I'm not sure if we could actually ever get a resolution to that question, because I'm at least, and my opponent may have a different answer, but I know several pieces of equipment other companies claim ownership to. So under the same theory of, well, I had a document that said I owned it, so did several other folks that are lined up in bankruptcy with this other company. Even if we interpreted possession to include constructive possession, would Nationwide still be obligated, or would it not be obligated, because they didn't even have constructive possession? I think under the circumstance of having no actual or constructive possession, there would be no coverage. That depends on what you mean by constructive. What do you understand constructive possession to be? Because you didn't seem to argue. The parties seem to have proceeded on the view that there's actual possession, and if that's the correct interpretation of the contract, then Nationwide wins. And if the contract is ambiguous as between constructive and actual, then I guess we can stew against the drafter, and so there would at least remain a genuine issue of material fact, or no. I guess it would depend on how the court defines constructive possession in this context. Which you haven't offered a definition, and they haven't really either. I don't believe it's the general basic understanding of constructive possession that appears to apply in this context in the sense that, given the circumstances of most of these pieces of equipment, no one's laid eyes on them. We don't even know if they actually exist to possess. And so I'm not sure if it's even a possible scenario to handle. And I believe the reason why this should be actual possession is the circumstance we're in. But for having this actual possession, or the lack of actual possession, you end up in a circumstance like this where you're just purchasing equipment, you never lay eyes on it or possess, and then you're in this quandary of how do you ever prove your loss. Well, do you agree or disagree with Homestead's position that constructive possession should equal legal ownership? I don't believe so. Well, it's nice that you say that. I would have thought, do you have anything to back that up? I think legal ownership alone is not sufficient. I know that one of the cases they referred to where they were saying that Tennessee law authorizes in the context of construing a policy, actual or constructive, was the Mobile Home City case, I believe was the name of it. And in that case, the court did say that actual and constructive possession, or possession may mean actual or constructive, but then went on to say the context of the policy is what then governs. And in that case, it was a mobile home repossession. And since actual possession of the mobile home was never in existence, there was no possession under that policy. And therefore, there was no coverage. All right. Questions? No.  Thank you very much. All right. We'll hear rebuttal. Yes, so first point I want to hit on rebuttals, Your Honors, is that this new argument that there would have to be actual possession by Homestead at some point at the very beginning, so that, for example, the equipment comes over from Italy and is delivered, and it must be for at least a second or a moment in Homestead's actual possession, that argument wasn't made below. So it's not. And then, because it was not made by Nationwide below, the district court in ruling just said actual possession. And if you read the opinion, it seems to be actual possession, as Judge Larson has been talking about it, immediately prior to the loss. In which case, how do we engage in the rental business, right? But that is the first time this new argument about actual possession for this moment at the beginning ever came up, is when we presented this conflicting decision by the carrier to pay the Kubota claim. And below, in the district court, they made the argument about installment payments, and that there was only one installment payment for that Kubota tractor, and not multiple installment payments over time. And they seem to have abandoned that now, and in their briefing before this court, they say, oh no, the distinction was that we know for sure that Homestead, at least for a moment at the very beginning, had the Kubota tractor on its lot at one of its facilities before the rental. And that's just not what they argued below. It's not what the district court ruled. And it can't be brought up for the first time here. Are you disputing that your home client had possession of that Kubota tractor? No, I'm not, Your Honor. They did at the very beginning, but they made a payment for the rental of that piece of equipment, and as Judge Larson described it correctly, when it came time to turn that thing back in, it was stolen. And so did we have actual possession immediately before the loss of that piece of equipment, as the policy says? But that is why this new argument seems to have arisen on appeal for the first time. Can I ask about the Kubota case, though? Because how does that inform your decision-making? I mean, maybe you just got more than you were entitled to in the Kubota case, and great, but how does that set precedent here? Are you saying we had the Kubota experience before we entered into this contract, so that's what the parties would reasonably understand? Well, the argument is that on the one hand, they want to say when there's a $3 million claim, we're not going to pay it, because there's not actual possession. And then you had the same situation. The reality of the Kubota was we didn't have actual possession of that either. The farmer had it, and he stole it from us. So we raise that as an argument of these inconsistent positions. Is it just a matter of, well, that was a $13,000 claim, and this is a $3 million claim, so we're going to deny that one and not the $13,000? I mean, the conduct of the insurer seemed to demonstrate to us that indeed they didn't abide by their interpretation. But this isn't conduct of the insurer before you entered into this or renewed the insurance contract. We don't contend that. And then I do want to point out these facts in the record, that it is undisputed in the record that we had bills of sale for all of this equipment that was stolen. In the record, my client went to South Carolina and took down serial numbers and inspected the equipment. They had a lender. They had Security Bank. And there's information in the record in the trial court below on summary judgment that the bank went and that the bank had UCCs filed on this equipment. So this is not, you know, to construe the record as, well, this was just willy-nilly and my client, you know, just because the equipment didn't in every case get shipped from Italy to Union City, Tennessee, and then from Union City, Tennessee, to Applied Machinery's facility or site in South Carolina, that we didn't take our ownership of this property very seriously. I mean, we were dealing with someone, as it turned out, who defrauded people of $100 million or more according to the bankruptcy proceedings. So I do take issue that the record sort of just reflects this lackadaisical business practice. You're saying we went, we looked at the equipment, we verified all the equipment was there. It's not like it never existed. And I think that if your honors rule that this is ambiguous, absolutely it needs to go to the district court to determine was there constructive possession on this equipment, this equipment, this equipment, and look at those facts because those facts are in the summary judgment record that you can see here on appeal. We'll only do that, I guess, if we decide that constructive possession was, A, it was possession ambiguous. If it was ambiguous, it could be constructive. But if constructive possession means something in this context, I mean, here, if Black's Law Dictionary says constructive possession means having some dominion or control, if we decide there's no evidence in the record you ever had dominion and control, then you may still be out of luck. I mean, you had Ron Parks was your man, right? Yes. In a deposition he testifies that, hey, he never cared where the equipment went, which certainly implies he never had any dominion or control over it. Well, if the property is re-rented, so to speak, from applied machinery to some farmer in South Dakota or North Carolina, Mr. Parks would have no reason to care, but if he didn't get his piece of equipment back, then obviously he would have a right to it, to pursue it and go and repleven the equipment because of his legal title. Because of his ownership, right. But the policy says he has to have possession and ownership immediately prior to the fraud. And again, Your Honor, I don't know how this is not illusory if he's supposed to have possession. May have bought what they call a pig and a poke. A $306,000 pig and a poke. All right. Thank you very much for your helpful arguments in this tricky insurance case. We appreciate your briefing and arguments, and the case will be submitted.